Martin v Witkowski (2017 NY Slip Op 09014)





Martin v Witkowski


2017 NY Slip Op 09014


Decided on December 22, 2017


Appellate Division, Fourth Department


NeMoyer, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 22, 2017
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, DEJOSEPH, NEMOYER, AND WINSLOW, JJ.


1380 CA 14-01794

[*1]ANTOINE MARTIN, II, PLAINTIFF-APPELLANT,
v
WALTER WITKOWSKI, DEFENDANT-RESPONDENT. (APPEAL NO. 1.) 






VINAL & VINAL, P.C., BUFFALO (JEANNE M. VINAL OF COUNSEL), FOR PLAINTIFF-APPELLANT. 
NASH CONNORS, P.C., BUFFALO (JAMES J. NASH OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


NeMoyer
 Appeal from an order of the Supreme Court, Erie County (Thomas P. Franczyk, A.J.), entered January 17, 2014. The order granted the motion of defendant to dismiss the complaint. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is denied, and the complaint is reinstated.
Opinion by NeMoyer, J.:
This appeal raises an age-old dilemma: how should the law distinguish between a father and son of the same name? Under the circumstances presented here, we hold that plaintiff properly commenced a single action against Walter Witkowski, Jr. notwithstanding plaintiff's initial and ineffective attempt to serve Witkowski, Jr. at the home of his father, Walter Witkowski, Sr.
FACTS
Plaintiff was injured in a two-car accident in the City of Buffalo on November 4, 2010. It is undisputed that the driver of the other car was one Walter Witkowski, Jr. (hereafter, Junior). Following the crash, Junior identified himself only as "Walter Witkowski," and did not disclose that he shared his father's name.
Plaintiff subsequently commenced this personal injury action by e-filing a summons and complaint on October 22, 2013. The caption on the summons and complaint named "Walter Witkowski" —no suffix—as the lone defendant. Within the caption of both documents, plaintiff wrote that the defendant Witkowski lived at "121 Pearl Street" in Buffalo.
On October 30, 2013, a process server went to 121 Pearl Avenue in the Village of Blasdell, Erie County, and delivered a copy of the summons and complaint to one Matthew Putnam, who the process server would later identify in his affidavit of service as the "co-tenant" and "grandson" of the defendant Witkowski [FN1]. Two days later, on November 1, 2013, the process server mailed a copy of the commencement papers to the address in Blasdell. The affidavit of service was then e-filed on November 6, 2013. We will call this series of events the "October [*2]2013 service."
As it turns out, however, Junior did not reside at 121 Pearl Avenue in Blasdell. Instead, his father, Walter Witkowski, Sr. (hereafter, Senior) resided at that address. Matthew Putnam, who also resided at 121 Pearl Avenue in Blasdell at the time, is Senior's grandson and Junior's nephew.
On November 20, 2013, Junior's attorney e-filed an answer on behalf of "Walter Witkowski," no suffix [FN2]. In the answer, Junior interposed the following affirmative defense: "this answering defendant is not subject to the jurisdiction of this Court as he was never properly served." The answer did not, however, interpose any defense or affirmative defense based on improper joinder.
Shortly thereafter, on November 23, 2013, a different process server went to Junior's actual residence in the Town of Aurora, Erie County, and delivered a copy of the summons and complaint to Junior's wife. On November 27, 2013, the process server mailed a packet to Junior's residence in Aurora; although not explicitly stated in the affidavit of service, it is uncontested that this packet contained a copy of the commencement papers. The affidavit of service was e-filed on December 3, 2013. We will call this series of events the "November 2013 service."
Perhaps realizing that the November 2013 service was effectuated after the statute of limitations had run, Junior adopted a new legal strategy: he began to argue that the attempted service on Junior at Senior's home in October 2013 constituted proper service on Senior, and that plaintiff had actually been suing Senior the whole time. In furtherance of this strategy, Junior rejected numerous discovery demands on the ground that he was not a party to the lawsuit.
Junior, purportedly as a nonparty, then moved to dismiss the complaint. Citing CPLR 1003 and CPLR 3211, Junior argued generally that Senior was the actual named defendant and that Supreme Court lacked personal jurisdiction over Junior due to improper service and improper joinder. Plaintiff opposed the motion, arguing that Junior was and always had been the lone defendant in this action, and that service upon Junior was properly effectuated within 120 days of commencement pursuant to CPLR 306-b.
The court granted Junior's motion. In its written decision, the court agreed with Junior's interpretation of the record and held that Senior was the actual defendant all along. Therefore, the court reasoned, Junior was never properly served or joined in this action.
Plaintiff appeals, and we now reverse. DISCUSSION
On appeal, plaintiff argues that the court misconstrued the record in determining that Junior was not properly joined and served. We agree. Our conclusion rests on a single foundational aspect of this case: Junior is, and has always been, the sole defendant in this action. Part I of our analysis will delve into that particular topic and will show why, under these circumstances, Junior is the correct and only defendant. Part II of our analysis will then show why that finding is fatal to Junior's claims of improper service and improper joinder.
I. Junior is the one and only defendant.A
The law is well acquainted with the confusion engendered by an identically named father-son pair, and it has devised a framework for addressing the issue whenever it arises. The rule was laid down authoritatively by Chancellor Walworth in the Court of Errors [FN3] over 175 years ago:
"The addition of senior or junior to a name is mere matter of description, and forms no part of the name. It is generally to distinguish between a father and a son of the same name . . . but the addition is useless, and the omission thereof furnishes no ground of objection . . . , where there is any other addition or description by which the real party intended can be ascertained" (Fleet v Youngs, 11 Wend 522, 524 [Ct Errors 1833] [emphasis added]; see also Padgett v Lawrence, 10 Paige Ch 170, 177 [Ch Ct 1843]).
In Fleet, the plaintiff in error (Arnold Fleet) sued out a writ against one "Samuel Youngs," without specifying whether it was returnable on Samuel Youngs, Sr. or Samuel Youngs, Jr. Notably, however, the writ did indicate that the "Samuel Youngs" in suit was the overseer of highways for the Town of Oyster Bay, which was then in Queens County. Moreover, the writ was sued out in connection with a prior action in which Youngs Junior—in his capacity as highway overseer—had successfully prosecuted Fleet for obstructing a road.
Despite his obvious identity as the proper defendant in error, Youngs Junior moved to quash the writ, arguing, inter alia, that it was actually taken against his father (Youngs Senior) because Fleet had not appended the suffix "Jr." to the defendant's name. Chancellor Walworth, speaking for all 16 judges on this issue, was decidedly unimpressed. "The objection on the ground of [name] variance is certainly not well taken," the Chancellor wrote, because Fleet's recitation "of [the defendant's] name of office, by which he was described in the record of the supreme court [as the overseer of highways], would be sufficient to identify him as the party to that record" and hence as the defendant in error. That was so, the Chancellor continued, "even if it appeared that [Youngs Junior] had a father by that same name residing in the town of Oysterbay [sic], unless it also appeared that the father was an overseer of highways, and that he had likewise recovered a judgment . . . against Fleet" (id. at 524-525). Indeed, the writ's "reference to the [underlying] judgment, in the condition of the bond for costs, is sufficient to identify [Youngs Junior as] the person intended as the [defendant in error]" (id. at 525).
Put in more contemporary language, it was undisputed that Youngs Junior was the overseer of highways and had prosecuted Fleet in that capacity in the underlying action. The Court of Errors therefore held that, by describing the defendant "Samuel Youngs" in those very terms, Fleet's writ contained ample "description by which the real party intended [i.e., Youngs Junior] can be ascertained" (id. at 524). Consequently, Fleet's failure to specify the defendant's suffix in the writ "furnishe[d] no ground of objection" (id.).
This logic applies with equal force here. The summons and complaint in this case named "Walter Witkowski" as the one and only defendant. It could not be plainer from the complaint that the "Walter Witkowski" being sued is the "Walter Witkowski" who had a car accident with plaintiff on November 4, 2010 in the City of Buffalo. And as all parties agree, that Witkowski is Junior, not Senior. There is no meaningful difference between the argument of Youngs Junior in Fleet and the argument of Witkowski Junior in this case.
Modern case law is consistent with Fleet. In Kiaer v Gilligan (63 AD3d 1009 [2d Dept 2009]), the plaintiff sued one "John Gilligan" (no suffix) for injuries sustained in a car accident. Evidently unbeknownst to the plaintiff, however, there was both a John Gilligan, Jr. and a John Gilligan, Sr. Plaintiff served only Gilligan Junior and insisted at all times that he (Gilligan Junior) was the intended defendant. Nevertheless, Gilligan Senior appeared, claimed to [*3]own the involved car, and moved to dismiss for lack of service upon him (Gilligan Senior). The motion court treated Gilligan Senior as the correct defendant and dismissed the action for inadequate service.
The Appellate Division reversed. Taking a practical, common-sense view of the record, the panel found that "it is clear, as the plaintiff contends, that Gilligan Junior was the intended defendant" (id. at 1011). Among the case-specific indicia upon which the panel relied for its finding was the "undisputed" fact that, "at the time of the accident, Gilligan Senior . . . had been, for at least 1½ years, a resident of Ireland" (id.). "Supreme Court [therefore] erred in concluding that Gilligan Senior was the defendant and in granting his motion to dismiss [for lack of service upon him]," held the Kiaer panel (id. at 1010).
Our facts are easily analogized to Kiaer and militate in favor of the same result. As in Kiaer, the complaint here does not explicitly indicate whether the defendant is Junior or Senior. Nevertheless, as in Kiaer, a common-sense and practical view of this record leads to the inescapable conclusion that the son, not the father, is actually the correct defendant. After all, it is undisputed both (1) that Junior was involved in the car accident underlying the complaint, and (2) that plaintiff is suing the individual involved in the car accident. The Kiaer panel, of course, rested its conclusion on factors unique to that case, but both sets of factors (Kiaer's and ours) ultimately end up in the same place: a compelling demonstration by the plaintiff that the nonsuffixed references to a particular defendant in the summons and complaint were actually references to the son, not the father.
B
Not so fast, says Junior. His brief identifies two distinct reasons for treating Senior, and not Junior, as the correct defendant here. First, Junior cites the fact that plaintiff initially delivered the commencement papers to Senior's house. Second, Junior claims that plaintiff's summons and complaint identified the Witkowski being sued as the Witkowski who resided at Senior's address. We are unpersuaded.
First, the fact that plaintiff initially delivered the commencement papers to Senior's house in October 2013 does not logically demonstrate that Senior was the intended defendant all along. Rather, the October 2013 service attempt shows only that plaintiff tried to serve Junior at Senior's house, and that this effort was defective because Junior did not live at Senior's house (see CPLR 308 [2])[FN4]. The actual occupants of Senior's house are irrelevant so long as Junior was not among them, and it defies reason to convert a defective service upon Junior into an effective service upon Senior by the mere fortuity of its location, i.e., the fact that the defective service occurred at Senior's house. Indeed, under Junior's reasoning, an identically named nonparty residing at the incorrectly-served address would somehow transmogrify into the defendant simply by virtue of having the same name as the real defendant.
And second, it cannot be said that the summons and complaint definitively identified the Witkowski being sued as the Witkowski who resided at Senior's address. According to the summons and complaint, the Witkowski being sued resided at 121 Pearl Street in the City of Buffalo. Admittedly, that is not Junior's correct address. But neither is it Senior's correct address; after all, Senior resided at 121 Pearl Avenue in the Village of Blasdell, a distinct municipality not even adjacent to Buffalo. Thus, while the address in the summons and [*4]complaint does not, standing alone, identify Junior as the named "Walter Witkowski," it also does not definitively identify Senior as the named "Walter Witkowski." The erroneous address in the caption should therefore be disregarded under CPLR 2001 (cf. Matter of Rue v Hill, 287 AD2d 781, 782-783 [3d Dept 2001], lv denied 97 NY2d 602 [2001]). Indeed, there is no legal obligation to identify the defendant's address in a summons and/or complaint (compare CPLR 305 [a] [requiring pleading of the plaintiff's address in certain circumstances]), and disregarding this de minimis defect puts Junior in no worse position than if plaintiff had simply omitted the defendant's address in the first place.[FN5]
C
In light of the foregoing, we hold that Junior is, and always has been, the only defendant in this case. We emphasize, however, that our conclusion is based in no part on the rule of Stuyvesant v Weil (167 NY 421, 425-426 [1901]), which "has been consistently interpreted as allowing a misnomer in the description of a party defendant to be cured by amendment [so long as] (1) there is evidence that the correct defendant (misnamed in the original process) has in fact been properly served, and (2) the correct defendant would not be prejudiced by granting the amendment" (Ober v Rye Town Hilton, 159 AD2d 16, 19-20 [2d Dept 1990] [emphasis added]; see Bracken v Niagara Frontier Transp. Auth., 251 AD2d 1068, 1068 [4th Dept 1998]). The Stuyvesant rule, which has been codified and subsumed within CPLR 305 (c), applies when there has been a "misnomer" in describing the defendant in the summons and/or complaint, and that simply did not occur here. Junior was not "misnamed" as defendant "Walter Witkowski." To the contrary, although this description is perhaps an imprecise recitation of the defendant's name, it is not in any sense an inaccurate recitation of Junior's name. Whatever else he might choose to be called, Junior is unquestionably a "Walter Witkowski." And as then Chief Justice Kent observed over two centuries ago, the suffix "junior is no part of the name . . . It is a casual and temporary designation. It may exist one day, and cease the next" (People ex rel. Bush v Collins, 7 Johns 549, 553 [Sup Ct 1811]). The Stuyvesant rule therefore has no application here; put simply, there was no "misnomer" that required correction by amendment.
II. Junior's status as the only defendant is necessarily fatal to his motion to dismiss.
Junior's various claims of improper service and improper joinder necessarily fail under the weight of our conclusion that he is and always has been the only defendant in this case. We will examine service and joinder separately.
Service
CPLR 306-b requires service of the summons and complaint upon the defendant—i.e., Junior and only Junior—"within [120] days after the commencement of the action." And that is precisely what occurred here. Junior freely concedes that he was served with the summons and complaint in November 2013, well within the statutory deadline for effecting service (which would have expired in February 2014). Moreover, there is no dispute that the November 2013 service constituted good and valid service under CPLR 308 (2). Junior—the only defendant in the case—was thus properly served (see Sorrento v Rice Barton Corp., 286 AD2d 873, 874 [4th Dept 2001]).
True, it took plaintiff two separate tries to properly serve Junior. As noted above, plaintiff's first attempt at serving Junior in October 2013 was admittedly defective under CPLR 308 (2) because the commencement papers were delivered to an address where Junior did not [*5]reside (i.e., Senior's house). But this is inconsequential. Plaintiff cured his defective service by effecting unquestionably proper service within 120 days of commencement, and it is black letter law that "plaintiff had the absolute statutory right to effect valid service at any point within the 120-day period [afforded by CPLR 306-b]" (Bank of N.Y. Mellon v Scura, 102 AD3d 714, 715 [2d Dept 2013], citing Gelbard v Northfield Sav. Bank, 216 AD2d 267, 267-268 [2d Dept 1995]). Accordingly, the November 2013 "re-service was entirely appropriate and served to cure the jurisdictional defects of which [Junior] complained" (Helfand v Cohen, 110 AD2d 751, 751 [2d Dept 1985]; see e.g. Bank of Am., N.A. v Valentino, 127 AD3d 904, 904 [2d Dept 2015]; IBJ Schroder Bank & Trust Co. v Zaitz, 170 AD2d 579, 579 [2d Dept 1991]). Service, after all, is not a "one strike and you're out" game.
Joinder
With respect to joinder, Junior argues that plaintiff's November 2013 service—even if valid for purposes of CPLR 306-b and CPLR 308 (2)—nevertheless violated CPLR 1003 because it effectively "added" Junior as a defendant in this action without judicial permission. CPLR 1003 obligates the plaintiff to obtain leave of court in certain circumstances before "adding" a defendant not originally named in the complaint. As Junior notes, a violation of CPLR 1003 is a jurisdictional defect that requires dismissal, even if the affected service is otherwise compliant with law (see Crook v du Pont de Nemours Co., 81 NY2d 807, 809 [1993], affg on op below [appeal No. 2] 181 AD2d 1039 [4th Dept 1992]). Junior, however, "failed to raise [his] defense of improper joinder in a timely, pre-answer motion to dismiss the complaint, and also failed to assert such defense in [his November 20, 2013] answer. Accordingly, [he] waived the defense" (He-Duan Zheng v American Friends of the Mar Thoma Syrian Church of Malabar, Inc., 67 AD3d 639, 640 [2d Dept 2009]).[FN6]
In any event, Junior's joinder argument is fundamentally flawed, for it necessarily assumes that Senior was the original defendant and that plaintiff thereafter "added" Junior to the action by serving him in November 2013. And as we explained in Part I, this assumption is simply wrong. Junior was always the lone defendant; Senior has never been a party to this action. As such, plaintiff could not have improperly "added" Junior as an additional defendant in November 2013, for there was no preexisting defendant in the action. Rather, plaintiff's service upon Junior in November 2013 simply corrected his defective service attempt upon Junior in October 2013. This re-service was "entirely proper" and "did not constitute the commencement of a second action" (Heusinger v Russo, 96 AD2d 883, 883 [2d Dept 1983]). CPLR 1003 is thus categorically inapplicable to this case, for there was no "addition" of a party within the meaning of that provision (compare e.g. Jordan v Lehigh Constr. Group, 259 AD2d 962, 962 [4th Dept 1999] [plaintiff violated CPLR 1003 by naming and serving one corporate defendant and thereafter serving a separate and distinct company without securing judicial permission to amend the summons and complaint to add the separate and distinct company]).
CONCLUSION
Contrary to Junior's argument and the court's determination, this is not a case in which either the "wrong party was sued" or the "wrong party was served." The right party (Junior) was sued from the outset, and the right party (Junior) was eventually served with the commencement papers in full compliance with the CPLR. The process was not hiccup-free, of course. When examined in a vacuum, the defendant's name on the summons and complaint was facially ambiguous; the summons and complaint stated that the defendant resided at an address other than Junior's; and plaintiff's initial attempt to serve the summons and complaint was defective. But the facially ambiguous name on the summons and complaint is easily and permissibly clarified [*6]by looking at the substantive allegations in the complaint; the erroneous address is insubstantial and caused no prejudice, and can therefore be disregarded under CPLR 2001; and the defective service attempt was cured within the appropriate time. The court therefore erred in dismissing the action on grounds of improper service and improper joinder. Accordingly, the order appealed from should be reversed, Junior's motion to dismiss denied, and the complaint reinstated.
Entered: December 22, 2017
Mark W. Bennett
Clerk of the Court



Footnotes

Footnote 1: According to his affidavit of service, the process server gave the commencement papers to Matthew Putnam at "121 Pearl Street" in Blasdell, but it is undisputed that no such address exists and that the process server actually went to "121 Pearl Avenue" in Blasdell. 

Footnote 2: Although both Junior and Senior have previously taken the position that Junior's attorney answered the complaint on Senior's behalf, Junior's attorney conceded at oral argument before us that he has never represented Senior. We therefore deem the answer filed by Junior's attorney to have been tendered on Junior's behalf.

Footnote 3: As the predecessor to the Court of Appeals, the decisions of the Court of Errors are binding to the same extent as the decisions of the Court of Appeals.

Footnote 4: Contrary to Junior's contention, it is immaterial that the October 2013 process server wrote in his affidavit of service that Matthew Putnam was the "grandson" of the defendant Witkowski (see State of N.Y. Higher Educ. Servs. Corp. v Sparozic, 35 AD3d 1069, 1070 [3d Dept 2006], lv dismissed 8 NY3d 958 [2007] ["Defendant's reliance on the fact that the affidavit of service indicates that her last name is Sparozio' rather than Sparozic' also is unavailing, as a misstatement on the affidavit of service goes only to the evidentiary value of the affidavit and does not impact the court's jurisdiction over defendant"]).

Footnote 5: Even assuming, arguendo, that the summons and complaint had listed Senior's correct address as the residence of the Witkowski being sued, it would be only one factor in favor of treating Senior as the proper defendant. And this one factor would be decisively outweighed by the undisputed fact that Senior was not the Witkowski who got into a car accident with plaintiff, i.e., the person that plaintiff was suing.

Footnote 6: A purported "amended answer" subsequently filed by Senior's attorney on Senior's behalf did contain some language that could be construed as an improper-joinder defense, but this purported "amended answer" is a nullity inasmuch as it was filed on behalf of a nonparty (i.e., Senior) who had neither a right to intervene pursuant to CPLR 1012 nor leave to intervene pursuant to CPLR 1013.